Our next case is 2016-2684 Core Wireless Licensing v. LG Electronics. Mr. Phillips, please proceed. Good morning, Your Honors, and may it please the Court. I think the first and most fundamental issue in this case is whether or not the patent in this case satisfies Section 101 as the Supreme Court articulated the standards analysis. There are two tests, as the Court is well aware. The first is whether it's directed at a patentable subject matter. And here we're talking about a patent that does not remotely involve any serious technology. I don't see anywhere in the record below that you presented the argument, the abstract idea that you're framing here, that you presented that to the lower court at all. Well, the particularized version of it, the index, was not the way we conceptualized it at the time. But the basic idea, and obviously if you make the 101 argument and the issue is, is it directed at an abstract idea, then you have to necessarily sort of, what is the concept? What is the concrete element of it? We thought it was easier to understand as an index, as comparable to an index. But the reality is, that's not critical to the argument. So you're saying that all you have to do is raise the 101 flag and it doesn't matter what argument you make below, you can make any argument you want up here? Well, I actually think that's probably true, unless you somehow misled the trial court by not appearing to have made a true 101 argument. You say that's probably true. I don't understand why. In claim construction, we have frequently held that you can't articulate a new claim construction on appeal for the first time if it's not the one you argued below. Right. So why should you be able to argue a new abstract idea on appeal if it's not the one you argued below? Well, the way I understand Supreme Court's decisions in a variety of cases is if you raise the fundamental legal issue, the precise method by which you articulate that particular legal issue is not critical. And again, I don't need the – I mean, we use the index metaphor because we thought it helped to sort of put this in context, but the reality is you don't need that. At the end of the day, all you're talking about is collecting and summarizing information and displaying it on a computing device. What would be your best case for the idea – I mean, Waver was certainly argued by LG with this indexing argument. What would be – you said it's your understanding under Supreme Court law that if it's a question of law, you can make any argument you want on appeal related to that question of law. What would be your best Supreme Court precedent for that understanding of the law? The – I'm trying to remember the specific name of the – I will give you the specific name of the case, but it's the Takings case that comes out of the Supreme Court. Justice O'Connor wrote the opinion in which she said exactly how you articulate the Takings issue is irrelevant. The question is did you present a fair Takings issue? The question here is did we fairly present a 101 issue to the court? And I'll go back to what I said. I don't need you to accept my argument that this is an index in order to determine that it is nevertheless not in a patentable subject matter because, again, all this patent does is collect information and display the information in a way that makes it more efficient for the user. It has nothing to do, frankly, with the way the computer operates. Mr. Phillips, let me take you from the sublime to the mundane. You argue that an unlaunched state has to mean not running. And these are my ignorant questions in the margins of the brief, so pardon me. But can an application be launched and minimized? In effect, does the term launch preclude an app that's running but is minimized so you don't see it? Yes. That's not an unlaunched state. That's a launched state. It's running. Our view of the world is. I'm just trying to clarify in my mind what you're arguing. From our perspective, the key for LG and the key, I think, for the prior art is that you're trying to tap in to the information of the running as it runs. And you're tapping into it as you go along. Oh, I understood you. Whereas with this invention, what it's trying to do is say as soon as you launch it and it starts running, it will provide you with the information. So in effect, it's minimized under their argument. Yeah, you could view it that way, although I suspect they wouldn't limit it to that particular context. It could be either minimized or just somewhere else in the system but capable of being launched. But the key here is, to me at least, that in the prosecution history, being in an unlaunched state would. Let me back you up, though. You just said capable of being launched. Well, I mean, it's capable of running or it's running. Your position is what they're saying is they're describing it as launched when it's in that state. Right. Well, I suppose you could think of it that way. The way I think about it is in our system, everything is unlaunched. I'm sorry, everything is launched. It's going on. Whether you can see it or not is irrelevant to anything. And we're pulling information in because that's the purpose of the patent. Theirs doesn't care about that. Theirs is simply a method of making it easy to find something. They don't care what the information is in. They're happy to take information away. But what they're really trying to do is say, once you launch, then you can easily see. You can see what you want, and then you can launch it, and then you can get whatever information you want from it. That's the purpose of the entire invention. The court says that if we find in your favor on construction of an unlaunched state, we still have to remand on factual findings on infringement. I don't think that's true. I think it is absolutely clear the only way this operates is in a – and our system is in a launched state. That's how our system operates. So I don't believe that's true. On the other hand, if the court felt that a remand was appropriate under those circumstances, I wouldn't object to it in that sense, because I think at the end of the day, the district court would almost certainly either do one of two things, find that as a matter of law there is no violation under these circumstances, or hold it until the IPR proceedings, which are going forward at this stage, have made their way through and find out whether because of the IPR the patent is otherwise invalid. Has the second damages trial occurred yet? No.  I think it's going to wait for the IPR appeals as well. And if this court wanted to hold this and wait for the IPR appeals as well, that would be a not inefficient use of the court's exercise as well. Your arguments on anticipation are predicated on the district court's claimed constructions of reach directly and unlaunched state. If we were to find in your favor on either claim construction, would we have to rule against you on anticipation? You wouldn't have to rule against me on anticipation. I wouldn't think you would have to. I'm sorry, we wouldn't have to rule on it. Yeah, I don't think you would have to rule on anticipation under those circumstances. We would be indifferent under those circumstances. Although I do think the anticipation issue is an interesting one, if only because you're in what seems to me a situation I've never seen before, where you have an expert who systematically and very carefully goes through each element and demonstrates how it is in fact anticipated in every way, and the other side has an expert to put on and chooses not to put the expert on. If there's an expert who goes through it but chooses not to credit that expert, you don't need to put on a rebuttal expert. The problem with that, I mean I understand that theory, and in general if the evidence doesn't reach to a certain level, but here the district court rejected the plaintiff's 50A motion, so there's certainly enough evidence to take it to the jury. Any good district court judge doesn't waste a jury if you get that far. Most of them reject a 50A motion at that point and say let's just see what the jury does, knowing they could always take it away if they think that there's not enough evidence at the end of the day. I don't disagree with that, Judge O'Malley. The problem with it is the way this court has analyzed this issue in the past is that if you put forth enough evidence to get past a 50A motion filed by the other side, that is in fact the prima facie case of invalidity, and therefore it becomes incumbent to come up with some evidence somewhere that rebutts that. And candidly, the only evidence put forth, there was no evidence put forth. Where have we said that? Because that sounds like something we wouldn't say. It also sounds like something I'm not familiar with. So what case do you have for the fact that surviving a 50A pretrial is prima facie, like you said it was? I'll give it to you. I apologize. But what the court said is that you would be very well advised to come forward with evidence. It didn't say it couldn't, that it has to be that way, but I think this case presents the question more acutely than in most, where there is absolutely no evidence. And the only indications put forward by plaintiff's counsel were arguments that the real- You suggested to Judge O'Malley that if we found for you, or maybe it was Judge Wallach, if we found for you on infringement, we might not have to reach these other issues. Don't we have to reach the validity under a cardinal chemical concept, even if we were to find non-infringement? I mean, I think it would be available to you. The only reason why I don't know that you have to do that here is because you have a separate appeal coming on invalidity. That's coming out of the IPR process. So I'm not sure in that unique circumstance. Which appeal? The separate appeal with respect to separate references? No, no. Well, both, actually. There's one appeal that involves both this reference and the other. Well, the IPR certainly can't address 101, right? So why would we not address 101? Assume we decided in your favor, if we were deciding it in your favor, wouldn't we actually meet the need for the other IPR? No, no. And that's correct. I don't understand. I thought Judge Wallach was asking specifically about the invalidity of anticipation and blanchard and whether you have to decide that issue, even if you decide in our favor. What was the declaratory judgment? I'm sorry? You filed a declaratory judgment, right? It wasn't only a defensive invalidity. That is correct. So we have to decide. But you would have to decide the 101 issue because that is clearly a preliminary. I don't fully understand this push-pull distinction that you're drawing in the briefs, and I also don't see it anywhere in the record below. I don't see you having presented that to the judge or the jury. If you look at Dr. Ryan's testimony, what he specifically talks about is the reason why you want the applications open is because they are supplying you with the information. That's how it gets pulled in. And just any reading of this, which requires it to be launched, and then the notification shows up, tells you that that's where the pull comes from. I mean, our basic pitch here is that what we're trying to do is exactly the opposite. But you didn't make that argument to the judge of claim construction. Not as a matter of claim construction because at this point we're talking about whether or not there's infringement under the proper claim construction. But you're also saying that that relates to the question of what running means or unlaunched means, right? Well, it shows you why what we operate could, under no circumstances, be viewed as dealing with an unlaunched state. You still have the fundamental problem that the district judge's construction of unlaunched states simply says it has to be displayed. And our argument there is that you cannot read the claims, which distinguish between displayed and unlaunched. You cannot read the prosecution history, which makes those distinctions. Now, again, Judge Wallach asked the question, do I think, would it be appropriate under those circumstances to remand, to allow the district court to revisit this particular issue in terms of whether there's been infringement? I don't have any problem doing that because I think I can, not only think, I know that I can show to the district judge the pull-push distinction as the reason why there has been absolutely no infringement under the circumstances. You can even make that argument in JMO. I mean, this is the first time it shows up is in the appellate briefs, right? And we did that in response to the question of whether or not something should be, whether it was appropriate to remand or not. And we were basically arguing we didn't think it was appropriate to remand because under the undisputed facts of the case, this is how it comes out. But again, Judge O'Malley, I don't, if you conclude that the district judge's construction is wrong, you can stop there and send it back. But part of my problem is it's like there's one case that was presented below and you're trying to present a totally different case up here on a whole host of issues. And that's what I'm having a hard time with. We have to review. We are a court of review. Of course. Judge O'Malley, I understand that. But we put before the judge the one-on-one issue and said it as clear as we could. This is all about collecting and displaying information. It adds nothing. It doesn't make the computer work better. This is clearly barred by this court's decision in electric power. And as we try to articulate it here, we talk about it as an index. You don't have to buy that in order to conclude that this is nothing but display and collect and display and doesn't advance the ball. With respect to unlaunched, we took the position it cannot be that displayed is the same as launched because that language is used distinctly in the claims and in the prosecution history. With reach directly from, we argued all along that you cannot reach anything from the menu. I'm sorry, Your Honor. So when we hear from opposing counsel, you're almost out of your rebuttal time as well. So, Mr. Wang? Thank you, Your Honor. May it please the court. Findings of infringement, eligibility, and no invalidity should be upheld. On the issue of section 101, the district court was correct that the claims are not directed to an abstract idea. The invention is to- You make several arguments that LG's purported construction of unlaunched would defeat several preferred embodiments recited in the patents that require applications to be running when information on the main application menu is displayed. Did you make those arguments below? And if so, where in the record? Your Honor, I believe we did make it during the O2 micro hearing that Judge Gilstrap conducted after the two witnesses had testified in the beginning of the trial. The two arguments that we focus on in our briefs are that the ongoing chat embodiment in the patent would be excluded by the proposed construction of not running, as well as the Bluetooth disclosure, which is at column four beginning at line 61, that talks about the device knowing Bluetooth devices in the vicinity. Now, if you have an ongoing chat, that means that the messages application that runs the chat is necessarily running, and yet it is unlaunched. You could see that in figure three. Likewise, with the Bluetooth embodiment, the system must be running to know that there are Bluetooth devices in the vicinity. Now, LG, in its reply, does not address these, does not reconcile their construction with these embodiments. In fact, they make no reference to the Bluetooth embodiment, but it is clear that these two embodiments are running, and yet they are unlaunched, and therefore it shows that unlaunched cannot mean not running, as LG proposes. So that is where this push-pull thing comes in, in the reply brief. I believe that was the point that they were trying to make in the reply brief, Your Honor. You could not respond to that, but what is your response to that? My response to that is, first, on the Bluetooth embodiment, the push-pull did not relate to that. They did not respond to the Bluetooth embodiment whatsoever. On the ongoing chat one, I think it is common sense that the message application must be running for it to know that there is an ongoing chat. It is not this hypothetical that they are positing that the application summary window somehow knows that there is an ongoing chat, even though the underlying application is not running. That, I think, is just a common sense argument, Your Honor. The figure three shows that there is an ongoing chat, and yet we know that in figure three, that message's application is in an unlaunched state. It is also inconsistent to construe the term unlaunched as not running because it is inconsistent with the actual claim language, which focuses on what is displayed and what is not displayed. When you look at the claim language, it is display a main menu, display an application summary window, display a limited list of functions or data, display those functions or data if they are selected, and display the summary window when the application is in an unlaunched state. All of that is drawing a contrast between what is displayed and what is not displayed. The specification confirms that distinction. Importantly, the problem that the patentee sought to avoid, they sought to avoid a situation where a user has to open and look at the application and search within it and navigate within it in order to find what they wanted. That is, they are trying to get away from a situation where the application is displayed. Is there a difference between home screen and main menu? There is no difference, Your Honor. In fact, there is testimony from LG's own expert that the status bar appears in the home screen. And I can give you the sites for that, Your Honor. You don't have to. I remember it. So LG's own expert testified that the status bar is part of the home screen. He also testified... It's part of. Yes. A radiator is part of a car, but it's not a car. And there's a difference between the two of them. Your Honor, he did testify that the main menu includes... He testified that the home screen includes the status bar. I'll give you that. He also testified that the home screen is the main menu. And he testified that if the status bar is, in fact, part of the home menu, that his opinion that there is no infringement would change. That was confirmed by LG's own manual that was presented to the jury. That was Trial Exhibit 213. And it's that manual that shows the home screen, and as part of the home screen, it identifies the status bar. Also, it was confirmed by LG's own statement at trial during the opening statement. In its opening statement, they told the jury the exact language was home screen. That's a euphemism. That's the same thing as a main menu. That's why that evidence in the record shows that the reach directly limitation was met and that there was substantial evidence for the jury to find it. Can an application be running and not displayed? It certainly can, Your Honor, and that is Figure 3, for example. Can it be displayed but not running? If it's displayed, it must be running, Your Honor. That would be my conclusion on that. With respect to Blanchard, you didn't call an expert. Why is that? Your Honor, we were not trial counsel, so I don't know the exact decision behind that, but it's clear from the record that they did not need to call their rebuttal expert. There is evidence in the record, and that evidence is in the form of the cross-examination testimony from Dr. Ryan. At Appendix 10741, he seriously undermined the argument that Blanchard discloses a limited list. He said that the menu that you are seeing, the parent menu, includes all the choices. That is not a limited list. At Appendix 10680-81, his testimony seriously undermined the idea that Blanchard discloses an unlaunched application or that it discloses an application window summary. Of course, the jury had the Blanchard reference itself, which was discussed. They could compare it to the patent, which of course was in the record as well. When you look at the Blanchard reference, I'll just give you a couple of sites there. If you look at Column 5, Line 40, and Column 4, Line 44, it's abundantly clear that the Blanchard reference was a weak reference, and there was no need for the patentee to put on its rebuttal expert on that. There's a lot of discussion in the briefs about who bore the burden of persuasion or the burden of production. Really, Your Honor, that's all static. You are sitting as a court in review. You have an entire trial record. You can see in that entire trial record that there is substantial evidence to support the jury's verdict that Blanchard did not anticipate. Well, I agree on one point, and that is that burden shifting is often confused with a simple translation of risk of not persuading the court from point to point. Sometimes one party bears that risk, and sometimes the other one does. That's not necessarily the same as burden shifting. What's your response to the suggestion that we should somehow just stand down and wait for all these IPRs to go through? I think that would be hugely inefficient, Your Honor. Those IPRs are before the court now. No briefing has been set. I think that there has only been one opening brief filed. I mean, the time for that to be resolved is potentially another year away. These issues are teed up before the court. The trial happened long ago, and the issues are very clear. Unlaunched was correctly construed by the court to mean not displayed. That is consistent with everything you see in the patent. It's consistent with the problem that they sought to avoid. If we reverse as to one of the constructions and send it back, how long is it going to take? Your Honor, there's only one issue where you are being asked to change the construction, and that's with respect to the unlaunched state. Of course, you could vacate the jury's verdict and remand for a new trial. How long that would take, I would assume at least a year. However, you don't have to do that. There is case law supporting the fact that you can uphold the jury's verdict, notwithstanding errors in the construction, if the result would not have been different under the evidence presented, and that is the case here. They say that it's very clear that their systems, that their applications are running. That's not so. You could see the deposition testimony that was played at trial. It came from a Google engineer. His name was Mr. Sandler at Appendix 10575. The application on Android need not have a process running or an activity visible for a notification to be visible by the user from that same application. Did you give us a video demonstration of a G4 phone, or someone did? It is in the record, Your Honor, and they did play that to the jury. Our expert, Dr. Zager, ran through several live demonstrations and video demonstrations to show all the limitations were met by the accused device. There's a blank page at 14452 that references the video demonstration, and unfortunately, I couldn't find a CD or something along those lines. Your Honor, I will double-check that after this hearing, and if we did not submit the CD, I will certainly have it submitted as promptly as possible. The record is that there is testimony from the engineer that, in fact, their systems would infringe even under the construction. The Appendix 10575 site is an example of that. There's another one in Appendix 10579 where he testified to the same effect, that, in fact, their process is not running and you will get a notification. Those notifications are what we accused as the application summary window. Again, at 10580, you'll see other testimony that would support a finding of infringement of the unlaunched limitation, even under LG's proposed construction. I don't think it makes sense to wait here. The record is very clear. We had a full trial. Unlaunch was correctly construed. There was no clear and unmistakable disclaimer there. To the extent you look at that issue and take a look at the Richards reference, Your Honor, the Richards reference related to that prosecution history statement, when they were talking about the Richards application running, they were referring to an application that is displayed. You can see that in Appendix 14462 at Column 3, Line 23, where the Richards reference shows that the applications, quote, Applications App A and App B are open on the desktop. Appendix 1461 at Column 1, Line 14, it's not unusual for a user to have more than one application, document, or file open on a desktop at any time. Appendix 14462 at Column 3, Line 60, where at first a method of switching focus between a plurality of open windows and a plurality of open applications. And at Appendix 14461, Column 2, Line 66, although not shown, it is to be understood that there may be more than one window open, but not in focus. There is nothing in Richards that says that the top window is the only one displayed. In fact, those references that I just quoted to you, they talk about what's in focus. So there are multiple things displayed, albeit one is in focus. And that understanding of Richards is consistent with the patentee's characterization of the benefits of the invention. The relevance of unlaunched is that the window is not displayed to the user. Were it already displayed, the problem that they sought to avoid would have already occurred. You would already see the application. They were trying to avoid that, having to navigate that and to search within it. And so construing unlaunched to mean not running overlooks that benefit and the problem that the patentees were trying to solve. Where in the patent is the information about Bluetooth? And where do you think it makes clearest that in order for the Bluetooth to be seeking and discovering devices, it has to be running even though it's in an unlaunched state? Your Honor, that shows up in Column 4, beginning at Line 61 of the 476 patent. It refers to open quote, Bluetooth application, which has associated with it a summary window, which lists the other Bluetooth devices in the vicinity. And in that context of the specification, what it's talking about is, how does the device and how does the application summary window keep current so that it knows what's going on? And one of the examples it gives is this Bluetooth embodiment. And so how does the device know that there are Bluetooth devices in the vicinity? We know from our own devices that that Bluetooth application has to be running. It's on and that's why it's searching to see if there are Bluetooth devices and that's how it knows when something is in its vicinity. In the prosecution history, court has distinguished its claims from the prior art because unlike the prior art, its claims did not, quote, only ever display the summary application menu, quote, within a running instance of the program, i.e., when the program is in a launched state. It seems to me that what that's saying is in the prosecution history, court used the term launch in the way it argues against Huron Appeal, that is to mean open, started, or running, not merely displayed. Your Honor, my comments earlier about the Richards reference were addressing that point. So when the patentee referred to the application in Richards as running, he was referring to an application that is displayed. And that is clear in the references in the appendix sites that I gave you at 14462, etc. And it's how they would read that statement in the prosecution is inconsistent with the benefits of the invention because the whole point was to avoid having to see the application. You didn't have to deal with that. You could get to what you wanted directly from the application summary window. Moreover, when you look at the records… Those preferred embodiment arguments that you make in relation to that, where were they below? I believe, Your Honor, that they came up during the O2 micro hearing. The judge held that… Now I can tell you specifically, Your Honor. Give me one second on that. Sure. Your Honor, the O2 micro discussion is at appendix 102A. And so I'm not certain if it was actually included during that discussion. But this issue was also addressed in the Rule 50 motions. And so I'm fairly certain, Your Honor, I just don't want to say anything that's incorrect. But it may be there. No, you did. I already did, Your Honor. I'm sorry. I didn't mean to, Your Honor. Oh, no. But you told us it was in the O2 micro discussion. So if I could take that back, Your Honor, mea culpa. And so I would look to the O2 micro section just to make sure whether or not it's in there. It may be in the Rule 50A motions where the claim construction issue was also brought up, Your Honor. I apologize for not having that at my fingertips. So what I wanted to continue about the Richards reference, though, Your Honor, is that it came up in the context of a 103 obviousness rejection by the examiner where the primary reference was admittedly lacking in the main menu and the Richards reference was used to make up for that deficiency. That was the context that Richards shows up in the prosecution history. So the further you read into the statements about Richards outside of this main menu limitation, which is different than the application summary window and unlaunched state that we're talking about, I think the more tenuous this claim construction argument becomes, Your Honor. So the context of the claims are what's displayed and what is not displayed, and that's very clear. And that's why the construction was correct. On the Section 101 issue, Your Honor, the district court was correct. We are way beyond your time, so we're not going to move into another new issue at this point. Let's give Mr. Phillips his three minutes of rebuttal time. That's pretty close to even it out. Okay. Thank you. Mr. Phillips, I don't mean to use up all your rebuttal time, but I have a procedural question. Yes, Your Honor. I understand what we said in Bosch and you get to appeal this despite the fact that I think it's insane and continue to, but it is what our law is. But in this case, we don't even have a vehicle for this judgment. There's no 54B. There's no 1292B certification. It's just here on appeal. Do you find that to be a problem? Well, yes. When we were debating filing the notice of appeal, I looked at Bosch and I read it to say that if you have a final determination on liability, then that's an appealable order, which I think goes in some ways back to the question of what's the most efficient way to handle this litigation, which is even if you were to affirm here, you still send it back for a trial on damages. I don't know why under those circumstances it's not equally efficient, frankly, to wait for the IPR if you wanted to do that. But the damage is discovery is all done and everything and there's been a lot of that fleshed out. I mean, a damages trial would be relatively easy in this case. Relatively easy unless the district judge is not inclined to want to hold it until after everything is finished on appeal and that's not an unrealistic outcome in this particular context. Do you remember Pogo? I do remember Pogo. We have met the enemy and he is us. Thank you, Your Honor. Judge Moore, you asked me about the citations to the question of under what circumstances you can put forward an expert. The other side doesn't put forward anything. Ye versus the City of Escondido is the case from the Supreme Court that I had in mind. CFC fabrication was actually a Fifth Circuit decision because it comes out because this is one of those procedural issues that you look to the regional circuit for is the one that takes the position that you have some obligation to do something in the face of this rather than simply making arguments by the counsel and that's 917F. I'm not sure that this would even be regional circuit law, Mr. Billups. This is a question of what would need to be proffered in exchange in a patent validity context with a clear and convincing evidence burden which exists almost nowhere in regional circuit law. What would satisfy that such that it would cause the other side to have to put on an expert? I don't think that's regional circuit law. I see no analog in the regional circuits for that particular scenario. I think it's probably federal circuit law. Well, the other side didn't challenge it. We said that we thought this was covered by Fifth Circuit law. The other side didn't contest that particular argument. I don't guess that's binding on you, but that was the way the issue was teed up. I understand your position. I still think it's an unusual situation where one side puts on a completely unrebutted expert testimony on each of the elements and the other side doesn't bring in an expert because he's already testified. It's not unrebutted if he actually undermines your very theories on cross-examination. So what's your response to your friend on the other side when he says that Dr. Ryan actually undermined your limited list limitation theory? Well, that wasn't the argument they put forward in the trial court at all. Limited list came up in the IPR proceeding. But if it is testimony in trial, it is testimony that the jury heard. But his testimony was, I mean, candidly, I find it hard to understand how you could argue seriously that there isn't a limited list because every list is almost inherently limited because you can only have certain items. But we know from Blanchard that you have the first entry. The A has got three items in it. And the next one has got two others that weren't listed the first time. So obviously that first list is a limited list. That's what he testified to. I have a hard time understanding how anybody, frankly, as a trier of fact, could reject that conclusion as to what's a limited list under those circumstances. I'll try to be as quick as possible. On the unlaunched stage versus displayed, you know, he focuses largely on the preferred embodiment, which didn't come up in the trial court. I mean, at the end of the day, the question here is what do the claims say? What are the specifications? What's the prosecution history? And all of that argues against displaying being able to launch. All right. If figure three includes an ongoing chat, if Bluetooth requires seeking devices, you know, all of those would be running at least some part of those applications in the background while they are played. It could just as easily be have run in the past and collected information and then closed down and it stays in the system. That's all. It could go either way. And there's no testimony on it. I don't understand it could go either way. What do you mean? You could have had a chat and then it gets into the system and you close down the chat and it stays in the system as a chat ongoing, but it's not open. But the whole point of their exercise was to put this in an unlaunched state because in a launched state, in a launched state, the prior art speaks directly to this. So to get around that, they had to go to an unlaunched state. The prior art has, does the prior art have things that are launched and not displayed? Yes, of course. Well, I don't know. I'm just having trouble getting around the Bluetooth example and the ongoing chat example. In Bluetooth, to seek a Bluetooth device, you have to be active and running in the background. Judge Moore, I guess what I would say to you is, one, that wasn't the focus of any of the analysis. It's in the patent. It's in the spec. No, I get that. But all I'm saying is that if you're looking at the claims, which, I mean, the judge's opinion says it's launched equals displayed, period. And if you read the claims, you read the spec, and you read the prosecution history, it is absolutely clear that that's wrong. And if you don't go any further than that, that's fine. Then you can get into a fight about what all of this means otherwise. But it's clear to me that launched cannot just mean displayed. It's got to mean something other than that in order to be applicable here. And then from the main menu, the only thing I would say is that the inventor recognized the status bar as different. Wait, wait, wait. Your friend on the other side effectively conceded that you can have something that's launched but not displayed. Right, right, which is undeniably true. But not everything that's, well, I think everything that's displayed is launched, but not everything that doesn't go both ways I think is the bottom line. And then finally, I do still think 101, the problem with 101 is not the index. Just like I cut him off, we're not moving into a new issue. Not a problem. I understand that, Your Honor. Especially since he never got to get there. Fair enough. Thank you, Your Honor. All right. I thank both counsel. Case is taken under submission.